David Oscar Markus
MARKUS & MARKUS PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida  33128
Tel: (305)379-6667
Admitted *pro hac vice*

Gerald H. Goldstein
GOLDSTEIN GOLDSTEIN AND HILLEY
310 St. Mary's St.
29th Floor Tower Life Building
San Antonio, Texas 78205
Tel: (210) 226-1463
Admitted *pro hac vice*

Michael A. Greenlick - OSB #852181
1001 SW 5th Ave., Suite 1414
Portland, OR 97204
Tel: (503) 224-2595

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

UNITED STATES OF AMERICA,
     Plaintiff,

vs.

HOSSEIN LAHIJI and NAJMEH VAHID,

     Defendants.
_____/

CASE NO. 3:10-CR-00506-KI

## DEFENDANTS' MOTION FOR DISCOVERY OF CLASSIFIED MATERIALS

Hossein Lahiji and Najmeh Vahid (collectively the "Lahijis"), by and through undersigned counsel, file this Motion for Discovery of Classified Materials, and state as follows:

1.    This Motion seeks the discovery of material documents and recorded communications in the possession of the Government, which have been withheld from

discovery because the materials are classified.  This discovery, which is material to the defense of this case, should be produced pursuant to Fed. R. Crim. P. 16, *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972)*, the due process clause of the U.S. Constitution, and the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq*.

2.       On December 15, 2010, the Lahijis were charged in a two-count Indictment. The first count of the Indictment charges that the Lahijis conspired to defraud the Treasury Department of the United States by "impeding, impairing, obstructing and defeating the lawful functions of the Office of Foreign Assets Control of the Treasury Department by deceitful or dishonest means in the administration and enforcement of the Iranian embargo" and "defeating the lawful functions of the Internal Revenue Service . . . in the ascertainment, computation, assessment and collection of th revenue, that is, income taxes." D.E.1, Indictment, at 5-6.  The second count of the Indictment charges that the Lahijis conspired to commit money laundering by knowingly agreeing to transport money from the United States to Iran in violation of the Iranian Embargo, "an offense involving Section 206 of the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705."  *Id.* at 26.

3.       Significantly, the Indictment does *not* charge the Lahijis with participation in any act involving terrorism or any act posing an actual threat to national security.  In sum, the Lahijis are charged with giving money to a real United States 501(c)(3) charity called Child Foundation.  This charity, which is still in operation as a 501(c)(3) nonprofit, is the same charity that reports it has gift matching programs with such companies as American

Express, AT&T, Lockheed Martin, Microsoft and United Way.  *See* Child Foundation Annual Report 2007.  By all accounts Child Foundation did, in fact, use the money for charitable purposes in Iran (as well as for the personal support of those who operated it). Application and Affidavit for Search Warrant, at 7. However, the charity allegedly violated the Iranian Embargo by sometimes sending actual funds to Iran for its charitable operations (rather than limiting itself to the provision of items excepted by the embargo such as food and medicine).[1]  The Indictment also alleges that the Lahijis maintained an interest in and control over some of the funds sent to Iran.  Finally, the Lahijis are accused of backdating a handful of checks by a few months in order to obtain a tax deduction in a prior year.  There are *no* allegations (nor could there be) that either the Lahijis *or* Child Foundation conspired in any way to provide support to the Iranian government or to any organization posing any threat to the United States.

4.    In the course of its investigation of this matter, the Government recorded innumerable telephone conversations and collected a large volume of documents. Neither the precise quantity and nature of these conversations and documents, nor the legal basis on which they were obtained, is known to the defense because the Government has asserted that this information is classified (as is the materials themselves).[2]  Upon

---

[1] Significantly, the Indictment does *not* allege that the Lahijis were aware that Child Foundation's actions were in violation of the embargo.  And the Application and Affidavit for Search Warrant submitted to this Court reveals that Child Foundation represented to its donors (including the Lahijis) that it did, in fact, "strictly adhere to the laws and regulations of the U.S. Department of Treasury, Office of Foreign Assets Control (OFAC)." Application and Affidavit for Search Warrant, at 16.

[2] Pursuant to the Foreign Intelligence Surveillance Act, surveillance may be conducted only upon a foreign power or agent thereof, and only for the purpose of obtaining "foreign intelligence information" that cannot reasonably be obtained by normal

information and belief, some or all of this material was collected pursuant to a search warrant issued under the Foreign Intelligence Surveillance Act (FISA).  Upon information and belief, some of these materials consist of recordings or communications to which one or both of the Lahijis were a participant.

5.      The Assistant United States Attorneys handling this case have been cooperative in their efforts to provide timely discovery of non-classified material to the Lahijis.  However, the Lahijis and undersigned counsel have not been afforded access to the classified material, which poses a significant impediment to the defense of this case.

6.      At the last status conference, this Court urged the Government to consider declassifying the material so the case could move forward.  Since that time, none of the classified material has been declassified.  Nevertheless, the Government has informed counsel that there is exculpatory information in the classified documents that will assist in the defense.  This distinguishes this case from others such as *United States v. Yunis,* 867 F.2d 617 (D.D.C. 1989), in which the court declined to order discovery "on a mere showing of theoretical relevance."  *Id.* at 623.

7.      Undersigned counsel has been attempting to obtain clearance to review the classified material for several months.  Despite enduring intrusive personal inquiries, the process still has not been completed.  Even upon obtaining the necessary clearances for

---

investigative techniques. 50 U.S.C. § 1804(a)(7).  Given the factual backdrop of this case, there is a considerable question as to whether FISA warrants were properly obtained.  This Motion does not address whether the Government's surveillance under FISA was appropriate in the first instance (which matters are reserved for separate discussion), but only whether the Government's continuing failure to declassify and provide the materials is in violation of law.

the attorneys, however, the limitations on review of the classified materials will significantly hamstring the Lahijis' defense, for the following reasons:

- The materials will be available for review only in a secure facility in Portland. Counsel will not be permitted to copy any of the materials or even to maintain possession of any notes.

- Most of the materials are in Farsi, making meaningful review by English-speaking counsel much more difficult if not impossible.

- The Lahijis will not have the opportunity to review the material themselves, depriving the defense of the meaningful and necessary context and background necessary for comprehension of the materials which is especially important in this case in light of the language barrier.

8.    While it is true that courts have given substantial deference to the interests of national security when balanced against traditional constitutional rights under FISA, this is because cases invoking FISA are almost always related to terrorism or other serious matters of national security. This case poses the relatively unique situation in which there are no such countervailing considerations. As a result, the failure to declassify and turn over these materials violates the Lahijis' due process rights. *Cf. Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) (stating that where the disclosure of confidential information is "relevant and helpful" or "essential to a fair determination of a cause," disclosure must be made). This is especially so with regard to any conversation or communication in which one of the Lahijis was a participant.

9.    This Court already has imposed a strict protective order limiting review and circulation of the discovery materials in this case. Accordingly, all documents which are produced will be protected from improper dissemination.

10.    In *In re National Security Agency Telecommunications Records Litig.*, 595 F. Supp. 2d 1077 (N.D. Cal. 2009), the court ordered the government to make the classified

Page 5 - Defendants' Motion for Discovery of Classified Materials

documents available for *in camera* review, and to conduct a review to determine whether any of the materials could be declassified and to take all necessary steps to declassify suitable materials. *Id.* at 1089-90. Similar relief is appropriate here. The Government should be ordered to review all classified material relevant to this case, and to declassify those materials which do not pose a threat to the national security (which, on information and belief, is all the materials). To the extent that the Government maintains that there would be potential harm to national security in disclosing any of the materials, it should submit an affidavit under oath from the Attorney General pursuant to 50 U.S.C. § 1806(f). *See, e.g., United States v. Badia*, 827 F.2d 1458, 1461 (11th Cir. 1987). It is hard to imagine how the Attorney General could take this position under the circumstances of this case,[3] but in any event, if such an affidavit is filed, this Court must review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance as may be necessary. § 1806(f); *Badia*, 827 F.2d at 1461; *In re National Security Agency Telecommunications Records Litig.*, 595 F. Supp. 2d at 1089-90 . The Court may deny the instant motion only if it finds both that the surveillance was lawfully authorized and conducted, *and* that the Lahijis' due process rights are not being violated by the continued withholding of these materials. *See Al-Kidd v. Gonzales*, 2008 WL 5123009, at \*4 (D.

---

[3] In addition to the fact that this case involves contributions to a legitimate charitable foundation, and not anything related to terrorism or threats against the United States, this also is not a circumstance where declassification of the documents would disclose the "time, place, and nature of the government's ability to intercept" communications. *Yunis*, 867 F.2d at 623 (denying discovery of classified documents in case involving hijacking of airplane because they would reveal important information about how the government obtained them). This is because some of the material has already been declassified as a result of the Government's case against Child Foundation and its principal, and therefore the sources of the Government's surveillance are already known.

Idaho Dec. 4, 2008).

WHEREFORE it is respectfully requested that this Honorable Court order the United States to declassify and turn over all materials related to this case. To the extent that the United States opposes this motion with an affidavit from the Attorney General asserting that disclosure of some or all of the materials would harm the national security interest, it is respectfully requested that this Honorable Court conduct an *in camera* review regarding the propriety of the continuing classified designation of these materials.

Respectfully submitted,

| | |
|---|---|
| **MARKUS & MARKUS PLLC** | **GOLDSTEIN GOLDSTEIN AND HILLEY** |
| **COUNSEL FOR HOSSEIN LAHIJI** | **COUNSEL FOR NAJMEH VAHID** |
| 40 N.W. Third Street | 310 St. Mary's St. |
| Penthouse One | 29th Floor Tower Life Building |
| Miami, Florida  33128 | San Antonio, Texas 78205 |
| Tel: (305)379-6667 | Tel: (210) 226-1463 |
| Fax: (305)379-6668 | Fax: (210) 226-8367 |
| www.markuslaw.com | |

By:    /s/ David Oscar Markus            By:    /s/ Gerald Goldstein
      DAVID OSCAR MARKUS                      GERALD H. GOLDSTEIN
      Admitted *pro hac vice*                      Admitted *pro hac vice*
      dmarkus@markuslaw.com                 ggandh@aol.com

**MICHAEL A. GREENLICK, ATTORNEY AT LAW**
**COUNSEL FOR HOSSEIN LAHIJI**
1001 SW 5th Ave., Suite 1414
Portland, OR 97204
(503) 224-2595

By: /s/ Michael A. Greenlick
    MICHAEL A. GREENLICK
    Oregon Bar Number 852181
    mike@mikegreenlick.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed this 24th day of June 2011, and served on all appropriate parties through that system.

<u>/s/ David Oscar Markus</u>
David Oscar Markus