IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                ) No. CR-10-506-KI
                                    )
     vs.                            ) June 28, 2011
                                    )
HOSSEIN LAHIJI (1),                 ) Portland, Oregon
NAJMEH VAHID (2),                   )
                                    )
          Defendants.               )
------------------------------

**STATUS CONFERENCE**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE GARR M. KING

UNITED STATES DISTRICT COURT JUDGE

                              APPEARANCES

FOR THE PLAINTIFF:     Charles F. Gorder, Jr.
                       David L. Atkinson
                       Assistant United States Attorneys
                       U.S. Attorney's Office
                       1000 S. W. Third Avenue
                       Suite 600
                       Portland, OR   97204

FOR THE DEFENDANT
HOSSEIN LAHIJI:         Michael A. Greenlick
                       Attorney at Law
                       1001 S.W. Fifth Avenue
                       Suite 1414
                       Portland, OR   97204

                       David Oscar Markus (by phone)
                       Markus & Markus
                       40 N. W. Third Street
                       PH1
                       Miami, FL   33128

FOR THE DEFENDANT
NAJMEH VAHID:          Cynthia E. Orr (by phone)
                       Gerald H. Goldstein (by phone)
                       Van G. Hilley (by phone)
                       Goldstein, Goldstein & Hilley
                       310 S. St. Mary's Street
                       29th Floor Towe Building
                       San Antonio, TX   78205

COURT REPORTER:        Nancy M. Walker, CSR, RMR, CRR
                       United States District Courthouse
                       1000 S. W. Third Avenue, Room 301
                       Portland, OR   97204
                       (503) 326-8186

                    P R O C E E D I N G S

THE COURT:  Good morning.

MR. GORDER:  Your Honor, Charles Gorder and David Atkinson for the Government.  This is a status conference set in United States versus Hossein Lahiji, et al., Case No. 10-506.  We're here.  We've got Mr. Michael Greenlick, who is local counsel for one of the defendants, and I guess co-counsel are on the phone.

THE COURT:  All right.  On the phone, I believe, are Cynthia Orr, Van Hilley, Gerald Goldstein, and David Markus.  Is that correct?

UNIDENTIFIED SPEAKER:  Yes, Your Honor.  Good morning.

THE COURT:  And, Mr. Greenlick, you're local counsel here for the defendants; is that right?

MR. GREENLICK:  Your Honor, just for Mr. Lahiji.

THE COURT:  Okay.  This is the time set for a status conference.  What I want to do is get an idea of where you see this case going and to set a schedule as is necessary.

Let's first talk about -- we do have a pending motion for discovery, and I'll get to that in a little bit, but where do you see this case going at this point?

Mr. Atkinson, you're standing, so I'll ask you.

MR. ATKINSON:  Thank you, Your Honor.  Good

morning.

Let me just briefly summarize where we are. If I were to characterize the status of this case in a sentence, it would be that we've made substantially more than a good down payment on discovery, but we are nowhere near total completion of discovery. And it's been difficult to discuss the case intelligently with counsel because some of the evidence is classified, and I'll get to that in just a moment.

But to bore down just a bit, at this stage we provided the defense representatives with something over 350,000 pages of discovery in one production, on 157 disks and DVD media, which included bank records and reports, witness interviews, copies of documentary items that were seized pursuant to search warrant, and a variety of material that has been declassified.

We have provided them with sound files of all of the material that was intercepted that is described in the indictment and all of the sound files from material from at least one source of interception that appeared to us, at first blush, to be arguably *Brady* or helpful to the defense. That has been declassified as well and provided to counsel, among the 350,000-plus pages.

In addition, we provided an e-mail account of a codefendant, Mr. Iranshahi. This e-mail account was in a

format that defied our Bates numbering system.  So perhaps the best way to describe it is that it consists of 37,500 more or less separate e-mail communications. So that's been provided as well.

More to the point, four members of the defense team for Dr. Lahiji and four for Ms. Vahid are now eligible for their interim secret clearances.  We've made arrangements for the court security officer, Mr. Slade, to meet with counsel in two weeks to read them into their obligations with respect to the classified material.  And we'll make a substantial down payment --

THE COURT:  So you have how many defense attorneys eligible to read the classified material?

MR. ATKINSON:  There are four representatives for each defendant, including lead counsel, specifically Mr. and Ms. Markus and either Mr. or Ms. Kaplan or Moss for Dr. Lahiji -- I haven't had the good fortune to meet Mr. or Ms. Kaplan and Moss at this point -- and Mr. Goldstein, Ms. Orr, Ms. Sorenson, and Ms. Najera for Ms. Vahid.

So actually, I stand corrected.  There are five members of the defense team for Ms. Vahid who are now eligible for interim clearances.  I think several representatives will be here in two weeks.

We've made arrangements for a facility with a

safe that is cleared for the handling --

THE COURT:  I didn't hear that.  You made arrangements for another safe -- I'm saying "another safe," but you're making arrangements for a safe.

MR. ATKINSON:  Yes.  Those are completed.  There is a room on the eighth floor here in the courthouse that will be used for storing the classified material and in which the defense teams will be able to work on that material, analyze it, and store the material and store their notes and their work product.

There will also be some word-processing equipment there that will enable them to -- to process any classified pleadings that may become necessary.  And Mr. Slade will no doubt help them file any classified pleadings that they may care to file.

So that process is just getting underway.  I can report to the Court that -- that one source of that material is very well organized, and we have it prepared to give to counsel.

Another source of the material is quite voluminous.  It will take a fairly substantial period of time for counsel to go through it.  And depending upon our discussions with them, once they're cleared, we can decide what the next steps will be with regard to the second set of material.

I can tell you that perhaps the most disappointing aspect of our discovery production so far has been the attempt by our forensic computer lab to create images of the hard drives of computers that were seized pursuant to a Rule 41 search warrant. These are all unclassified. I think we have the best in the business working on it. We've been promised this material for some period of time now, and we get regular updates from --

THE COURT: This is a technical problem, not a classified problem.

MR. ATKINSON: This is a technical problem.

THE COURT: You intend to produce this if you can get it.

MR. ATKINSON: We intend to -- we will produce it, Judge. It's just not going as quickly as we'd like. We apologize to counsel for that. But we're doing everything within our power.

There may be another hundred or so disks of audiovisual media that the defendants have requested. These were items that were seized pursuant to criminal search warrant. Again, these are -- none of them are classified.

And one of the delays with respect to the production of them is that -- that many of them we need

to copy in real time.  In other words, we're not able to fast-forward and copy them, because they're magnetic tape rather than CD or DVD digital items.  So we have to convert them from magnetic tape to -- you know, to a digital format, which is quite time-consuming, but we're -- we've provided a good chunk of that material, and we're right in the midst of completing that job.

We're in the process of having transcripts made of the critical communications that will be -- that we intend to offer during the course of trial.  When those are complete, we'll provide them to counsel, but those are yet to come.

With respect to the motion to declassify, Mr. Gorder and I were both gone last week, so we were able to look at it for the first time yesterday.  We conferred with counsel yesterday afternoon in advance of this status conference, and we suggested that we discuss that motion when they're here, after they're read in, in two weeks, to see whether we're able to narrow the issues or eliminate the need to litigate this motion altogether.

I can indicate that we will be receptive to going to bat for the defense representatives in having any items that they deem to be critical to their defense declassified within reason.  I think that may narrow the issue substantially.

Once we confer and once they're in a position to identify those items that they deem to be most critical, it may well be that the parties will be able to agree on much of that, leaving little for the Court to decide.  So it seems to me that --

THE COURT:  Well, that would be good.  I don't have the authority to order the United States to declassify materials.  As far as I know, I don't.

MR. ATKINSON:  That is true, Your Honor.

THE COURT:  That's what I'm being asked to do here as one alternative.

But I definitely want the Government to sit down with defense counsel and, as you say, limit the issues to the extent that you can limit the issues; and then to the extent that classified material is relevant, make an attempt to declassify that material before we get into a lot of arguing motions about this.  I don't want to turn this into another Mohamud case, frankly.

MR. ATKINSON:  Yes, sir.

THE COURT:  And I don't think I have room for another safe in my chambers.

So this is something, in looking at this -- particularly if these defense attorneys are going to be allowed to review, under whatever protective order, to review classified information, it seems like you ought to

be able to work out most of these issues.

So I appreciate hearing what you're saying.

MR. ATKINSON:  So yesterday when we conferred with counsel -- in light of where we are in this case, it just doesn't seem appropriate at this point to set deadlines.  And what we suggest is that we set another status conference the week of September 12th -- we should be much further along at that point -- and revisit perhaps the setting of motion deadlines and a schedule for the case to progress thereafter.

I think counsel was in agreement with that suggestion, and I believe it's a joint request of all the parties that we do that.

THE COURT:  That's September --

MR. ATKINSON:  September 12th, the week of September 12th, which is a Monday, Judge King, at the Court's convenience, if you're here.

THE COURT:  That's not a good week.  I'm in trial that week and my law clerk is gone on vacation.  I'm in trial the next week, same case.  It's a two-week case. So we'd have to be looking at the week of September 26th, the first couple of days of that week.

MR. ATKINSON:  I know that Mr. Goldstein had a conflict later in September.

MR. GOLDSTEIN:  This is Jerry Goldstein on behalf

of Najmeh Vahid.

It's the 22nd and 23rd that's the conference at Fordham, so the week of the 26th looks like it would work for us.

THE COURT:  Okay.  We can set that for the morning of the 27th, if everyone agrees, set it for 10:00 a.m.

Now, I do want to see if anybody has any ideas at this point as to what type of motions we can expect to have filed in the case.  From the defense standpoint, have you looked at that yet?

MR. MARKUS:  Your Honor, this is David Markus. We've looked a little at it.  I think part of the problem is we haven't seen all the discovery yet, so we'd ask for some time to formulate what the outline of the motions may be.  I think there may be a motion to dismiss some of the counts, but it's hard to tell without seeing the discovery as of yet.

THE COURT:  All right.  What you want, then, is another status conference on September 27th.  I think that makes sense.

Now, speedy trial rights?

MR. GORDER:  Your Honor, currently there's an order declaring the case complex, and you excluded up to today, so we would need to renew that order, based on the

complexity of the case, as you've heard, I guess at this point through September 27th.

THE COURT:  All right.  If this has been declared a complex case, we don't have to redeclare it, but we can extend the speedy trial clock until -- let's say September 30th for now, and then we'll take care of it on the 27th.

MR. GORDER:  Thank you.

THE COURT:  Okay.  Anything you think we should talk about today?  Just because we've got everybody on the phone, is it a good time to try and talk a little bit about where we're going with this case?

As I say, I hate to see this turn into a mass of paper and then find out that many of these issues are not really issues.

MR. ATKINSON:  Your Honor, you may or may not be aware of the fact that both defendants are also charged in the Southern District of Texas in an unrelated case. The case is completely unrelated to this, with one exception.  There is some overlapping discovery.  But other than that, they're completely unrelated.

THE COURT:  What are the charges in Texas?

MR. ATKINSON:  Health care fraud at this point.

There's a potential for an IEEPA count as well. So to that extent, there would be some relationship

between these cases if that were indicted, but it hasn't been indicted yet. And I think the AUSAs in Houston that we're in communication with are hopeful that they won't have to present anything else and we can reach a global settlement.

I can report this, Judge King. Mr. Markus and Mr. Goldstein were good enough to fly out to Portland earlier this spring. We sat down and had a very productive meeting with them. We talked very frankly about what our proof was and made a big notebook for them with some of the hot documents and let them go with that. Because this case does have such a massive amount of paper, we thought that would be helpful to them.

They were very gracious in thanking us for that, and we've resolved to sit down and meet again, of course, once the remainder of the discovery is available to them, and get a reality check on where we're headed.

We obviously are very far from having any agreements. This case may well go to trial. It could be settled. It's just too early to report, Judge King.

THE COURT: All right. I appreciate that effort.

I will stress before there is any motion filed, before there is anything brought before the Court, I want the parties to make a good faith attempt to resolve it. And by "good faith attempt," I'm talking about getting

together and trying to work through things.

MR. ATKINSON:  Yes.  With respect to the current motion that's pending, may I suggest that rather than respond in a normal course to this motion, that we have a couple of weeks after we're able to meet with counsel in mid July to see whether we're able to narrow the issues; and, if so, how far we're able to narrow them.

THE COURT:  All right.  Let's do that.  I want to see that happen.

It was filed on June 24th.  Let's set a date for the Government's response that will give you an opportunity to go through this.

What date do you propose?

MR. ATKINSON:  Maybe -- perhaps July 29th, Judge King.

THE COURT:  All right.  Government response, July 29th.

Does the defense have anything to say about that?

MR. MARKUS:  No, Your Honor.  That's fine with us.

THE COURT:  Anything else we should take up today?

MR. GORDER:  Your Honor, just one thing.  Before counsel gets access to the classified material, we need a protective order.  I will be submitting a proposed

protective order later this week.  I've cleared it with the court security officer in terms of what they would like to see in it.  I believe there will be no objection. I've sent a copy to counsel.

THE COURT:  All right.  Thank you.

We'll be in recess.

MR. GOLDSTEIN:  Thank you, Your Honor.

MR. MARKUS:  Thank you, Your Honor.

(Proceedings concluded.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-titled cause.  A transcript without an original signature, conformed signature or digitally signed signature is not certified.


*/s/ Nancy M. Walker*                          *7-22-11*
_____          _____
NANCY M. WALKER, CSR, RMR, CRR            DATE
Official Court Reporter
Oregon CSR No. 90-0091