**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF OREGON**
**PORTLAND DIVISION**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA** | § | |
| | § | |
| | § | |
| **V.** | § | **CRIMINAL NO. 3:10-CR-506-KI** |
| | § | |
| | § | |
| **HOSSEIN LAHIJI** | § | |
| **NAJMEH VAHID** | § | |
|     **Defendants** | § | |

**DEFENDANTS HOSSEIN LAHIJI'S AND NAJMEH VAHID'S**
**MEMORANDUM IN SUPPORT of DEFENDANTS' EXHIBITS**

Through the course of the trial in the instant case, Defendants have moved for the admission of certain exhibits to which the Government objected. The Court, having taken the admissibility of such exhibits under advisement, instructed the Defendants to submit a memorandum of the legal bases for admissibility.

### *Government Exhibits*

Defendants' records concur with the government's status report filed June 16, 2013, as to its exhibits admitted into evidence.

### *Defendants' Exhibits*

Defendants' records indicate that the following defense exhibits have been admitted into evidence (this list includes several exhibits not included on the government's list submitted to the Court in its pleading filed June 16, 2013): 518, 587, 588, 589, 603, 605, 609, 654, 658, 661, 670, 671, 672, 674, 677-683, 690, 693, 709.

Defendants' records indicate that objections have been asserted against the following exhibits, all of which were seized by the Government in its investigation and produced to Defendants by the Government in discovery:

1

CF Website Pages:  501, 502, 504, 505, 508, 511, 515, 535;

CF Official Multimedia Presentation, Powerpoint Slide Presentation, "Frequently Asked Questions" & Sign: 517, 531, 532, 533;

CF Official Brochures, Advertisements, Fundraising Material, Newsletters, Magazines & Other Official Publications:  519, 520, 522, 523, 525, 526, 528, 529, 530, 534, 592;

CF Compliance Documents: 524, 606, 635, 636;

Minutes of CF Board of Directors' Meeting:  540, 562, 567;

Documents re: CF's Official Activities and/or Types of Fundraising:  538, 539, 541, 542, 544, 545, 550, 554, 555, 556, 557, 558, 559, 561, 564, 570, 571, 573, 579, 583, 584, 594, 598, 617, 618, 624, 629;

Correspondence regarding Lahiji Donations: 578;

CF Document regarding Use of Iranian Bank Account and/or Expenditure of Funds in Iran: 580, 614, 615, 616, 630.


*Prosecution and Defensive Theories*

1. Government's Case.  To underscore the relevance and necessity of the Defendants' exhibits, the context must be considered. The government has introduced evidence in order to prove its theory that the Child Foundation, as an entity, was a criminal coconspirator managed by two fellow coconspirators Yasrebi and Iranshahi. That is, that the entity itself, as well as the entity Refah Koodak, also had a criminal state of mind and was a knowing, intentional criminal coconspirator. Included in the evidence admitted by the Court is testimony that Foundation/donor monies went to an Ayatollah who is "rumored" to give monies to the Iranian government and terroristic supporters.  Despite Defendants' best effort pretrial to limine evidence and mention of terrorism, as well as this Court's order sustaining the Defendants' limine request, the government's trial evidence has been supplanted by (1) testimony from several witnesses that they were conducting a terrorism investigation, (2) testimony that this case concerns a matter of funds going to support terrorism and/or the terroristic extremist government of Iran, and (3) the prosecutor's statement in

2

opening statement that the jury unfortunately will not be able to get the full story of what is going on because the government cannot talk to witnesses in Iran nor obtain documents in Iran. The introduction of such matters has affected the tenor of this case and the necessity for Defendants to respond. Additionally, the government is introducing evidence of the Foundation's illegal activity in opening a bank account and purchasing a building in Iran. The government introduced testimony that a criminal investigation of the Child Foundation began as early as the year 2000, and the Foundation has been operating illegally since. If left unresponded, the government's evidence would unjustly narrow the scope of what the Foundation was actually doing during the years at issue as well as inaccurately narrow the scope of how the Foundation was representing itself to the general public.

Moreover, the government has introduced expert testimony from an official of the US. Government of the establishment of a presidential embargo with many restrictions, conveying the distinct impression that the enforcement of these restrictions has been uniform, consistent and clear, where there is significant evidence to demonstrate the opposite is true.

Defendants seek to introduce evidence of business records of the Foundation, emails of its principles, and government-filed documents that counter each of the theories espoused by the government. To deny the admission of Defendants' exhibits would be to nullify a major component of the Defendants' theory of defense in a case in which Defendants have no witness to be able to call to otherwise introduce sufficient evidence regarding the operation of the Child Foundation and the operation of OFAC.

2. Defendants' Theory of Defense.  It is critical to the defensive theory of this case to establish the extent of legitimacy of the Foundation (the Defendants' alleged coconspirator), and that of the Foundation's two managers also alleged to be coconspirators, Yasrebi and Iranshahi. This is particularly compelling and necessary as a result of the Government's improper introduction of evidence of terrorism-related factors and the obvious and prejudicial post 9-11 state of mind existing

in our country.  It is critical to the Defendants to demonstrate the legitimate acts of the Foundation, the extent to which the Foundation sought to comply with its legal obligations (i.e., notifying OFAC of its activities, contacting and consulting with attorneys and CPAs), the extent to which it represented itself to the general public as an entity involved in legitimate charitable endeavors, and the extent to which many donors evidently perceived the legitimacy of the Foundation through their donations and correspondence.

Also, evidence relative to OFAC's operations is central to evaluating the state of mind of Defendants' alleged coconspirators. Alleged coconspirator Yasrebi testified that he believed sending money to Iran was legitimate based on (1) his knowledge that another similar charity was told by the Director of OFAC that sending money to Iran to assist the poor and elderly did not require a license, (2) he hired the same attorney who had represented this other charity in connection with such request to OFAC, and (3) OFAC did not deny CF's request to do the same. To the extent Yasrebi had criminal intent, and the extent to which such intent can be gleaned and inferred from the proposed and related exhibits, is material in the jury's determination of whether Defendants entered a criminal agreement with Yasrebi, the Child Foundation, Iranshahi and/or Refah Koodak (each of which purportedly acted with a criminal state of mind). For example, one of the email exhibits listed above is an email from Iranshahi to Yasrebi about the opening of an account in Iran. Included in the email is a suggestion by Iranshahi to Yasrebi to consult with an attorney. The government should not be able to present circumstantial evidence of their criminal state of mind in unlawfully opening an account contra to OFAC regulations without the consideration of exactly similar form of communication (emails between them) to demonstrate their innocent state of mind in wanting to do so (i.e., a person with a criminal state of mind would hardly suggest to his criminal coconspirator to consult with an attorney regarding the proposed illegal act).

The exhibits listed above, in their different forms, should be admitted to demonstrate to the

jury the truth of what was going on in the ordinary course of the Foundation's business. Defendants have no witness to call otherwise. The only principals who were operating the Foundation are Yasrebi and Iranshahi, both of which are unavailable.

<u>*Legal Bases for Admissibility*</u>

The primary objection by the government appears to be hearsay, although the government also cites relevancy and lack of foundation as other bases. It is worthwhile to remember, however, the purpose of the hearsay rule. The bar on hearsay was created in order to protect against unreliable testimony. Many exceptions exist in the rules where the trustworthiness of the proposed statement is evident or where there is sufficient indicia of reliability. Additionally, statements are admitted where they are offered for a purpose other than to prove the truth of their content. These concepts underlie the bases of admissibility.

Defendants offer four independent grounds for admissibility.

1. <u>Rule of Completeness</u>.  The primary principle of admissibility of the proposed exhibits is grounded upon Rule 106 of the Federal Rules of Evidence. As this Court is aware, Rule 106 mandates the admission of "any other writing or recorded statement" if an adverse party introduces "all . . . of a writing or recorded statement" and "in fairness" the "other writing ought to be considered." Although the rule is typically applied where part of one statement is admitted to complete the balance of such statement, the rule contemplates the introduction of separate documents and statements by inclusion of the words "all . . . of a writing" and "other writing". The Notes of the Advisory Committee indicate that the rule "is an expression of the rule of completeness" and is "based on two considerations", with the first being "the misleading impression created by taking matters out of context

In order to be able to present proof of Defendants' theory of defense, that neither they nor their alleged coconspirators were engaged in secret, nefarious activity, the admissibility of the

proposed exhibits is critical. As indicated by undersigned counsel in opening statement, substantial evidence is there to prove that the Foundation and Defendants engaged in open, legitimate activity. Defendants must be able to present to the jury a full picture of what was going on. Admissibility of the proposed exhibits, particularly where there is no witness to offer testimonial evidence of the comprehensive state of legitimate business activity, is critical.

2. Not Hearsay. The exhibits referenced above are business records of the Foundation (official documents of the Foundation, communications by and to Foundation officers) and officially-filed documents from OFAC all obtained from the government in discovery. The individual statements are not offered for the truth of the matters asserted. Rather, they are offered as evidence of the form of business being conducted by the Foundation and the fact that these types of records exist within the Foundation's business records. The very presence of these statements and the fact that these statements were made, regardless of whether the content is true, is evidence of innocent behavior. Moreover, they are relevant to the issue of whether all donors, including Defendants, would be reasonable in making donations to this entity, an issue which is central to Defendants' theory of defense. Similarly, evidence of actions taken by OFAC, as evidenced by the proposed official records of OFAC, is material, whether or not the content is true, as it is evidence of the lack of clarity and/or inconsistent application of enforcement on the pertinent regulations. The importance of the documents is not whether the content is true, but rather that certain positions taken by OFAC were inconsistent with other positions it took. This is material in determining the alleged criminal state of mind of all alleged coconspirators and whether or not their actions were reasonable. That is, where there is evidence of lack of understanding and/or inconsistent enforcement by OFAC, the jury is better informed to evaluate whether the Defendants' argument that alleged coconspirators believed they were in compliance with OFAC regulations is a reasonable argument given all the facts.

3. <u>Statements of Then Existing Mental Condition</u>. Rule 803(3) is an exception to the hearsay rule of exclusion. The exception allows the introduction of statements of the declarant's "then-existing state of mind (such as motive, intent, or plan)" to "prove the fact believed." Different from the "coconspirator rule" of Rule 801, Rule 803(3) has been the basis of the admission of statements made by an alleged coconspirator to prove the alleged coconspirator's state of mind. *See United States v. Cicale*, 691 F.2d 95, 104 (2d Cir. 1982) (admission of alleged coconspirator statement under 803(3) to prove state of mind independent of coconspirator rule of admissibility); *United States v. DeJesus*, 806 F.2d 31, 35 (2d Cir. 1986) (803(3) admissibility in conspiracy case independent of coconspirator non-hearsay rule). The statements offered by the Defendants in the proposed exhibits are proof of the alleged coconspirators' state of mind (i.e., the lack of intent of the Foundation and/or other alleged coconspirators to commit criminal acts, and/or, in the alternative, their intent to act legimately and with good motive). This is critical in the jury's determination of whether an illegal agreement was entered between these alleged coconspirators and the Defendants. That is, if the jury is tasked to determine whether the alleged coconspirators had a criminal state of mind sufficient to enter the criminal conspiracy agreement with the Defendants, evidence of the then existing state of mind of the alleged coconspirators is highly relevant and material. The proposed exhibits are all evidence of such a state of mind.

4. <u>"Residual" Exception</u>. Even if the Court was to determine that some or all of the exhibits are hearsay statements, such statements are not excluded by the rule of hearsay if (1) "equivalent guarantees of trustworthiness" exist, (2) the statements are offered as evidence of a material fact, (3) the statements are more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts, and (4) admitting the statements will best serve the purposes of the rules of evidence and the interests of justice. All of these standards are met with respect to these exhibits. Clearly, the proposed exhibits are the same types of exhibits

7

introduced by the government (business records, emails and intercepted telephone conversations) and were seized from the exact same locations as the government's exhibits. They are business records of the Child Foundation and government-filed records. The face of the statements and the manner in which they were seized evidence more than sufficient indicia of reliability. Additionally, the Defendants/proponents have no witnesses to offer testimonial evidence of the type of evidence offered by these exhibits."

It would not serve the interest of justice to allow the government to present a narrow view of Foundation business activity and concomitantly refuse to admit the substantial amount of evidence that truthfully represents the actual business of the Foundation and the bases for actions taken by the alleged coconspirators.  As this Court's express findings of fact establish at the sentencing hearings of Yasrebi and the Child Foundation, there is substantial evidence to indicate that the Foundation was not engaged in terroristic activity and was instead engaged in legitimate humanitarian activity. Unless the exhibits are introduced, Defendants have no other means available to introduce the facts which led this Court to make factual findings of the substantial humanitarian activities the Foundation was engaged in, as well as the extent to which the public responded with good intent and the extent to which understanding and application of OFAC regulations is murky. These concepts are material to determining the scope of the alleged conspiracy and whether actions taken by the alleged coconspirators was reasonable or criminal in nature. The proposed exhibits are evidence of business activity kept in the ordinary course of business as well as recorded conversations intercepted by the government. The proposed evidence is not an oral statement offered by a witness without giving the government the opportunity to test the declarant's trustworthiness. The exhibits themselves are exactly the same type of government exhibits admitted by the Court thus far, and as such evidence which on their face evidence sufficient indicia of reliability.

The remaining objections by the government are meritless. The foundation of the proposed exhibits is the same foundation that underlies the admission of the government's seized exhibits. Similarly, they are all just as relevant to issues of intent and alleged conspiratorial agreement. In terms of Rule 403, the necessity and materiality of the evidence in providing the jury with a complete, accurate picture greatly outweighs exclusion. Allowing the government to present an incomplete picture to the jury would result in a gross miscarriage of justice, which is particularly compelling given the current post-9/11 culture and the government's introduction of prejudicial information. If for no other reason, the government's blatant introduction of terrorism issues in violation of this Court's clear pretrial instruction and rulings warrants admissibility of these exhibits, for the government has injected significant prejudice and an inaccurate view of the intent and underlying actions taken by the Foundation and its managers. Defendants must be permitted to present evidence exculpatory to the alleged criminal state of mind of the alleged coconspirators.

Wherefore, premises considered, the Defendants respectfully urge this Court to admit Defendants' exhibits on the basis of Rules 106, 801, 803(3), and/or 807 of the Federal Rules of Evidence.

Respectfully submitted,

/s/ Michael McCrum
Michael McCrum
MCCRUM LAW OFFICE
700 N. St. Mary's Street, Suite 1900
San Antonio, TX 78205
(210) 225-2285
(210) 225-7045 (fax)
michael@mccrumlegal.com
Attorney for Defendant Hossein Lahiji

9

/s/ Joe A. Cisneros
Joe A. Cisneros
State Bar No. 04256000
THE CISNEROS LAW FIRM, L.L.P.
312 Lindberg Street
McAllen, Texas 78501
Telephone: (956) 682-1883
Telecopier: (956) 982-0132
Counsel for Defendant Najmeh Vahid

Certificate of Service

I hereby certify that a copy of the above and foregoing memorandum has been hand delivered, on this the 17th day of June, 2013 to the Assistant United States Attorney assigned to the instant case.

/s/   Michael McCrum
Michael McCrum

10